IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRAILERS INTL, LLC, a Nevada     3:15-cv-00171-BR (Lead Case)
corporation, and VINCENT L.     3:15-cv-00767-BR
WEBB,     (Consolidated Cases)

       Plaintiffs,     OPINION AND ORDER

v.

MASTERCRAFT TOOLS FLORIDA,
INC., a Florida corporation;
GLOBAL EQUIPMENT COMPANY, INC.,
a New York corporation; HOME
DEPOT USA, INC., a Delaware
corporation; K-MART CORPORATION,
a Michigan corporation; POWER
EQUIPMENT DIRECT, INC., a
Delaware corporation; SEARS,
ROEBUCK AND COMPANY, a New York
corporation; SKY DISTRIBUTORS OF
AMERICA, INC., a Florida
corporation; STEVEN F. RESCH;
XUEFENG ZHANG; ZHUHAI
SHARP-GROUP ENTERPRISE CO, LTD.,
a foreign corporation; and XIAOFEI
YANG,

       Defendants.

**STEPHEN J. JONCUS**
Joncus Law, LLC
P.O. Box 838
Clackamas, OR 97015
(971) 236-1200

              Attorney for Plaintiffs

**J. PETER STAPLES**
Chernoff Vilhauer McClung & Stenzel, LLP
601 S.W. Second Avenue, Suite 1600
Portland, OR 97204
(503) 227-5631

              Attorneys for Defendants Mastercraft Tools
                  Florida, Inc.; Global Equipment Company, Inc.;
                  K-Mart Corporation; Sears, Roebuck and Company;
                  and Xuefeng Zhang.

**MAYA CHOKSI**
**NICHOLAS POPASTAVROS**
DL Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000

**TAMAR DUVDEVANI**
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
(212) 335-4500

**STELLMAN KEEHNEL**
DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044
(206) 839-4888

              Attorneys for Defendant Home Depot USA, Inc.

**EDWARD CHOI**
**JULIA E. MARKLEY**
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
(503) 727-2053

2 - OPINION AND ORDER

**MELISE BLAKESLEE**
Sequel Technology & IP Law, PLLC
1000 Potomac Street, N.W., Suite 150-A
Washington, DC 20007
(202) 470-4815

> Attorneys for Defendants Power Equipment Direct, Inc.

**BAOLIN CHEN**
Chen & Mu
1000 S.W. Broadway, Suite 2150
Portland, OR 97205
(503) 222-3384

> Attorneys for Defendants Zhuhai Sharp-Group Enterprise Co., Ltd. and Xiaofei Yang

**BROWN, Judge.**

These consolidated matters come before the Court on the following Motions:

1.   The Motion (#93) to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, Compel Arbitration and Stay Litigation filed by Defendants Mastercraft Tools Florida, Inc.; Global Equipment Company, Inc.; K-Mart Corporation; Sears, Roebuck and Company; and Xuefeng Zhang (collectively referred to herein as the Altocraft Defendants);

2.   The Motion (#95) to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, to Compel Arbitration and Stay Litigation filed by Defendants Zhuhai Sharp-Group Enterprise Co., Ltd., and Xiaofei Yang (collectively referred to herein as the Jumbo Defendants);

3 - OPINION AND ORDER

3.    The Motion (#98) to Dismiss Claims 1-5 of the First Amended Complaint filed by Defendant Power Equipment Direct, Inc. (PED); and

4.    The Motion (#110) for Stay Pending Arbitration filed by Defendant Home Depot USA, Inc.

For the reasons that follow, the Court **DENIES** the Altocraft Defendants' Motion (#93), the Jumbo Defendants' Motion (#95), and Defendant Home Depot's Motion (#110); **GRANTS** PED's Motion (#98) to Dismiss; **DISMISSES** Plaintiffs' Claims 1-5 as to PED **without prejudice**; and grants Plaintiffs leave to amend their Complaint as to PED **no later than February 5, 2016.**

## MOTIONS TO DISMISS FILED BY ALTOCRAFT DEFENDANTS (#93) AND JUMBO DEFENDANTS (#95), AND HOME DEPOT'S MOTION (#110) FOR STAY

The Altocraft and Jumbo Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the basis that the Court lacks jurisdiction or, in the alternative, these Defendants move to compel arbitration and to stay this matter.  Home Depot similarly moves to stay this matter pending the completion of arbitration.

## I.    Background

The following facts are undisputed and taken from the record on the Motions to Stay filed by the Altocraft and Jumbo Defendants and Home Depot:

4 - OPINION AND ORDER

On December 1, 2009, Plaintiffs and the Jumbo Defendants entered into a Memorandum of Understanding (MOU) whereby Plaintiffs granted Jumbo an exclusive license to use Plaintiffs' trailer technology; to manufacture the trailers; and to be the worldwide distributor of Plaintiffs' trailers in exchange for, among other things, a $150,000.00 advance on proceeds from trailer sales.  The MOU provided the Jumbo Defendants were to submit to Plaintiffs a monthly accounting of all trailers that the Jumbo Defendants sold.  The MOU also provided the Jumbo Defendants were to pay Plaintiffs 20% of the actual cost of manufacturing goods associated with "Kit Trailer Sales" and 20% of the selling price of "Cargo Management Products."  Under the MOU Plaintiffs licensed the trademark and brand name "UtilityMate" for use by the Jumbo Defendants and Plaintiffs agreed to "extend use of any and all trademarks, patents, copyrights" to the Jumbo Defendants that "assist in the manufacturing and sales of all UtilityMate Products."

The MOU provides in particular:

### 9.  *Term and Renewal*

This Agreement shall become effective upon execution of this Agreement by each of the Parties hereto, and shall remain in full force and effect for a period of five (5) consecutive years from the effective date. Thereafter, this agreement shall renew every 24 month basis [*sic*] as the parties agree unless terminated by either party with or without cause, with no less than ninety (90) days notice prior to the anniversary date of this agreement to the other party, unless terminated for cause as outlines in section ten herein.

**10.  *Default, Cure and Termination***

The parties shall give notice of default and provide opportunity to cure any such default claimed under the Agreement as follows:

(a)  If default is claimed by either party, the nature of the default or breach shall be specified in writing by the party claiming default, and may be cured by the party receiving such notice by full performance and cure of the specified default or breach, within (30) days of receipt of written notice of default therefore.  If for some reason default is not cured, binding Arbitration will be initiated by the non defaulting [*sic*] party.

The original term of the MOU ran through December 1, 2014. On January 25, 2011, Plaintiffs and the Jumbo Defendants agreed to extend the MOU until December 1, 2015.

In May 2010 Plaintiffs, the Jumbo Defendants, and the Altocraft Defendants entered into an oral agreement to permit the Altocraft Defendants to act as the distributor of UtilityMate trailers on the east coast of the United States and in South America.  Accordingly, on May 16, 2011, the Jumbo Defendants entered into an agreement with the Altocraft Defendants to "distribute Utilitymate Trailers in the east coast of US market and Latin America Market."  That agreement stated the Jumbo Defendants had a "signed contract with Vince Webb[1] from [Utilitymate], LLC, and has all the rights to use Utilitymate

---

[1] Plaintiff Webb is the principal of Plaintiff Trailers Intl.

6 - OPINION AND ORDER

Brand, trademark, manuals, picture and all the materials from the website," and the Jumbo Defendants authorized the Altocraft Defendants to use the same as the distributor.

Plaintiffs and the Jumbo Defendants amended the MOU on September 12, 2010, to require Plaintiffs to "rework the UtilityMate website and sales materials to include Jumbo."

In early 2011 Plaintiffs sent to the Jumbo Defendants a notice of default regarding the Jumbo Defendants' alleged failure to abide by specific terms in the MOU and alleged failure to manufacture trailers to Plaintiffs' standards.  Thereafter Plaintiffs sent second and third notices of default to the Jumbo Defendants.

On October 2, 2011, Plaintiffs sent an email to the Jumbo Defendants in which Plaintiffs offered to terminate the contract for, among other things, a $150,000 payment to the Jumbo Defendants.  Webb stated he "spoke to [his] attorney at length regarding this matter, he advised me that we should terminate the agreement immediately and if you are unwilling to agree, I should immediately move to arbitration as outlined in the agreement." The Jumbo Defendants did not immediately respond.

On October 10, 2011, counsel for Plaintiffs sent the Jumbo Defendants a letter notifying them that Plaintiffs were terminating the MOU because the noticed defaults had gone uncured for six months.  In that letter Plaintiffs' counsel stated:

7 – OPINION AND ORDER

> Per the agreement, in the event of a failure to cure,
> binding arbitration may be demanded by the
> non-defaulting party.  You were noticed on different
> occasions and refused to acknowledge or participate.
> Therefore my client is left with no other recourse than
> to terminate the agreement between the parties
> effective immediately.

Plaintiffs and the Jumbo Defendants continued to negotiate

termination of the MOU in February 2012, but they failed to reach

an agreement regarding contract termination.  In an email to

Plaintiffs dated February 27, 2012, the Jumbo Defendants stated

they would "continue to perform [their] contractual duties under

said contracts and [would] resort to all means to protect [their]

contractual rights under those contracts."  Although the Jumbo

Defendants continued to manufacture and to distribute trailers

using Plaintiffs' intellectual property, they did not report any

sales of trailers to Plaintiffs and have not paid Plaintiffs for

any trailers that they manufactured or sold.  In addition, the

Altocraft Defendants continued to sell trailers supplied by the

Jumbo Defendants that were identical to those manufactured under

the MOU and that continued to bear the UtilityMate mark.  The

trailers sold by the Altocraft Defendants (and supplied by the

Jumbo Defendants) also continued to bear VIN information that

included numbers associated with Plaintiffs.

On January 30, 2015, Plaintiffs filed a Complaint (#1)

against Defendants in this Court.  On May 11, 2015, Plaintiffs

filed a First Amended Complaint (#68) (FAC) in which Plaintiffs

8 - OPINION AND ORDER

raise the eight claims against Defendants that are now at issue in the Motions before the Court:

In Claim One Plaintiffs bring a claim against all Defendants for copyright infringement under 17 U.S.C. § 501 on the ground that Defendants have used and continue to use Plaintiffs' copyrighted images in owners' manuals and on their websites.

In Claim Two Plaintiffs bring a claim against all Defendants for trademark infringement under 15 U.S.C. § 1114(1) on the ground that Defendants have used and continue to use Plaintiffs' trademarks in connection with the manufacturing, distribution, and sale of the trailers.

In Claim Three Plaintiffs bring a claim against all Defendants for trademark counterfeiting under 15 U.S.C. § 1114(1) and 1116(d) on the ground that Defendants have used and continue to use trademarks on products that are identical to or substantially indistinguishable from Plaintiffs' trademarks.

In Claim Four Plaintiffs bring a claim against all Defendants for false designation of origin under 15 U.S.C. § 1125(a)(1) on the ground that Defendants have used names identical to or confusingly similar to Plaintiffs' names on products that Defendants have sold.

In Claim Five Plaintiffs bring an unfair-competition claim against all Defendants under 15 U.S.C. § 1125(a)(1) for passing off products that were not manufactured by Plaintiffs as

9 – OPINION AND ORDER

Plaintiffs' products.

In Claim Seven Plaintiffs bring a common-law commercial-disparagement claim against the Altocraft Defendants on the ground that the Altocraft Defendants have represented they make the same products and are the same company as Plaintiffs.

In Claim Nine Plaintiffs bring a common-law conversion claim against the Jumbo Defendants for failure to return all blueprints, tooling, and dies to Plaintiffs after termination of the MOU.

Finally, in Claim Ten Plaintiffs bring a trade-secret misappropriation claim against the Jumbo Defendants for failure to return and continuing to use Plaintiffs' blueprints, tooling, and dies.

## II.  <u>Standards</u>

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, written agreements to arbitrate disputes that arise out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a court finds the issue involved in a federal action is referable to arbitration under a written arbitration agreement, the court shall, on application of one of the parties, stay the trial of the action until such arbitration has been completed in accordance with the terms of the agreement provided the applicant

for the stay is not in default in proceeding with such

arbitration.  9 U.S.C. § 3.

"By its terms, the [FAA] 'leaves no place for the exercise

of discretion by a district court, but instead mandates that

district courts *shall* direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has

been signed.'"  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

F.3d 1126, 1130 (9th Cir. 2000)(quoting *Dean Witter Reynolds,*

*Inc. v. Byrd*, 470 U.S. 213, 218 (1985))(emphasis in original).

"The court's role under the Act is therefore limited to

determining (1) whether a valid agreement to arbitrate exists

and, if it does, (2) whether the agreement encompasses the

dispute at issue."  *Id.  See also Cox v. Ocean View Hotel Corp.*,

533 F.3d 1114, 1119 (9th Cir. 2008).

## III. <u>Discussion</u>

The Jumbo Defendants contend in their Motion and the

Altocraft Defendants and Home Depot agree that Plaintiffs must

arbitrate their claims against the Jumbo Defendants under the

terms of Section 10 of the MOU.  Thus, each of these parties seek

to compel arbitration and to have this case either stayed or

dismissed pending the results of that arbitration.

Plaintiffs, on the other hand, contend they are not required

to arbitrate their claims under the terms of the MOU because

(1) Plaintiffs terminated the MOU in October 2011 before the

11 - OPINION AND ORDER

allegedly tortious conduct took place, (2) the arbitration provision is unenforceable because it lacks material terms, (3) the Jumbo Defendants abandoned their rights under the contract by failing to report sales and to make payments to Plaintiffs, and (4) Plaintiffs' claims do not fall within the scope of the arbitration provision.  In addition, Plaintiffs contend the Altocraft Defendants cannot enforce the terms of the MOU because they are not parties to the MOU.

**A.   Termination of the MOU**

As noted, Sections 9 and 10 of the MOU provide:

> ### *9.   Term and Renewal*
>
> This Agreement shall become effective upon execution of this Agreement by each of the Parties hereto, and shall remain in full force and effect for a period of five (5) consecutive years from the effective date. Thereafter, this agreement shall renew every 24 month basis [*sic*] as the parties agree unless terminated by either party with or without cause, with no less than ninety (90) days notice prior to the anniversary date of this agreement to the other party, unless terminated for cause as outlines in section ten herein.
>
> ### *10. Default, Cure and Termination*
>
> The parties shall give notice of default and provide opportunity to cure any such default claimed under the Agreement as follows:
>
>> (a)   If default is claimed by either party, the nature of the default or breach shall be specified in writing by the party claiming default, and may be cured by the party receiving such notice by full performance and cure of the specified default or breach, within (30) days of receipt of written notice of default therefore.  If for some reason default is not cured, binding Arbitration

will be initiated by the non defaulting [*sic*] party.

Sections 9 and 10 read together, therefore, provide two mechanisms for termination of the MOU. First, a party may terminate the MOU at the end of its natural term with or without cause as long as the terminating party provides notice to the nonterminating party at least 90 days before the end of the natural term of the MOU. Second, a party may terminate the MOU with cause before the end of its natural term if the terminating party (1) provides notice of the alleged default to the non-terminating party, (2) provides the nonterminating party at least 30 days to cure the alleged default, and (3) initiates binding arbitration if the default remains uncured.

As noted, although the original term of the MOU ran through December 1, 2014 (five years after the parties entered into the MOU), Plaintiffs and the Jumbo Defendants agreed on January 25, 2011, to extend the MOU for an additional year through December 1, 2015. Plaintiffs, however, contend their communications to the Jumbo Defendants in October 2011 terminated the MOU for cause as of that date, and, therefore, their claims regarding all of the Defendants' use of Plaintiffs' intellectual property after that date are not subject to the arbitration clause.

The Court notes, however, it is undisputed that Plaintiffs never initiated arbitration as required by the MOU. On this

13 - OPINION AND ORDER

record, therefore, the Court concludes Plaintiffs did not terminate the MOU in October 2011.

**B.    Enforceability of the Arbitration Provision**

Plaintiffs next contend the arbitration provision is unenforceable because it lacks material terms as to the procedure for arbitration.  Specifically, it appears Plaintiffs contend the arbitration clause is unenforceable because it did not set out the scope of arbitration or when, how, where, and by whom arbitration was to be conducted.

"Under the FAA . . . state law that 'arose to govern issues concerning the validity, revocability, and enforceability of contracts generally' remains applicable to arbitration agreements." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)(quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685-87 (1996)).  Under Oregon law "[i]f the parties' communications and actions manifest assent to be bound by promises, they will form a contract unless the promises are 'so indefinite that a court cannot determine what the parties intended.'" *Wieck v. Hostetter*, 274 Or. App. 457, 472 (2015)(quoting *Logan v. D.W. Sivers Co.*, 343 Or. 339, 347 (2007)).  To determine whether a contract is sufficiently definite to be enforceable, the court must determine "whether the agreement 'contain[s] an exchange of promises that the parties intended to be binding and that are sufficiently definite to

14 - OPINION AND ORDER

allow a jury or court to determine what is required of each party.'" *Wieck*, 274 Or. App. at 472 (quoting *Logan*, 343 Or. at 347).

Contrary to Plaintiffs' contentions, the default, cure, and termination provision is quite clear:  To the extent that any noticed default remains uncured after 30 days, the nondefaulting party "will" initiate binding arbitration to resolve any remaining conflict between the parties and, if necessary, terminate the contract before the end of its natural term. Although the MOU did not contain terms regarding specific details as to how an arbitration would proceed, the Court concludes the lack of such detail is not sufficiently material to render the arbitration clause unenforceable because the Court, nevertheless, can "determine what is required of each party" on the face of the contract.  *See Logan*, 343 Or. at 347.

Accordingly, on this record the Court concludes the arbitration provision in Section 10 of the MOU is enforceable.

**C.  Rescission or Waiver of the Contract**

Plaintiffs next contend the Jumbo Defendants waived application of the arbitration provision or otherwise rescinded the MOU when they failed to make any further payments and failed to report sales to Plaintiffs after Plaintiffs stated their intent to terminate the MOU.

A contractual provision may be waived by the unilateral

15 - OPINION AND ORDER

conduct of one of the parties to the contract.  *Bennett v.
Farmers Ins. Co. of Oregon*, 332 Or. 138, 156 (2001).  Such a
waiver, however, "must be unequivocal."  *Id.* at 157.  On the
other hand, "[r]escission of a contract must occur 'by agreement
of the parties, whether expressed by words or manifested by
conduct.'"  *Matter of Marriage of Baxter*, 139 Or. App. 32, 37
(1996)(quoting *Edgley v. Jackson*, 276 Or. 213, 218 (1976)).  To
rescind a contract by conduct, however, the parties' conduct must
demonstrate "mutual intent to no longer be bound by its terms."
*Matter of Marriage of Baxter*, 139 Or. App. at 37.

The record here does not permit the Court to conclude the
Jumbo Defendants waived the arbitration provision in the MOU or
otherwise acted in a way that demonstrated an intention not to be
bound any longer by the terms of the MOU.  To the contrary, the
Jumbo Defendants stated on February 27, 2012, that they would
"continue to perform [their] contractual duties under said
contracts and . . . resort to all means to protect [their]
contractual rights under those contracts."  Moreover, the Jumbo
Defendants continued to manufacture and to distribute trailers
using the intellectual property that Plaintiffs provided to them
under the MOU.  Although the Jumbo Defendants' alleged failure to
report any further sales or to make any further payments to
Plaintiffs may, if true, constitute breaches of the MOU, the
Court cannot conclude as a matter of law at this stage of the

16 - OPINION AND ORDER

proceedings that those alleged failures constitute a waiver or rescission of the MOU or the arbitration provision especially in light of the Jumbo Defendants' unequivocal statement that they would continue to avail themselves of the MOU terms and continue to manufacture and to distribute trailers.

Accordingly, on this record the Court concludes Plaintiff has not demonstrated the Jumbo Defendants waived or otherwise demonstrated an intent not to be bound any longer by the terms of the MOU.  Because Plaintiffs did not successfully terminate the MOU and because the Jumbo Defendants did not otherwise rescind or waive the MOU, it follows that both Plaintiffs and the Jumbo Defendants remained bound by the terms of the MOU at least until December 1, 2015.

**D.    Scope of the Arbitration Clause**

Finally, Plaintiffs contend their claims fall outside of the scope of the arbitration agreement because these claims do not implicate any breach of the MOU.  The Court agrees.

The Jumbo Defendants, the Altocraft Defendants, and Home Depot, on the other hand, assert Plaintiffs' claims fall squarely within the arbitration clause.  Specifically, these Defendants emphasize that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability.'"  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647

F.3d 914, 922-23 (9th Cir. 2011)(quoting *Moses H. Cone Mem'l*

*Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

"Courts should thus 'construe ambiguities concerning the scope of

arbitrability in favor of arbitration.'"  *Cape Flattery Ltd.*, 647

F.3d at 923 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*,

514 U.S. 52, 66 (1995)).

The arbitration clause in the MOU, however, is not ambiguous

and, as noted, it simply provides:  "If for some reason default

is not cured, binding Arbitration will be initiated by the non

defaulting [*sic*] party."  By its terms, therefore, the

arbitration clause applies only to circumstances in which a party

to the MOU seeks to redress an uncured default of the other

party's obligations and, if necessary, to terminate the MOU for

cause before the end of the MOU's natural term.  Plaintiffs'

claims, however, are not premised on any specific "default" as

described in the MOU.  The arbitration provision, therefore, does

not apply to Plaintiffs' claims in this action.[2]

Accordingly, on this record the Court concludes Plaintiffs'

claims against the Jumbo Defendants, the Altocraft Defendants,

and Home Depot do not fall within the scope of the arbitration

clause in the MOU, and, therefore, the Court denies the Motions

---

[2] The Court need not determine at this stage of the
proceedings whether Plaintiffs' failure to terminate the MOU has
any effect on Plaintiffs' claims.

of these Defendants to dismiss or, alternatively, to stay pending arbitration.

## PED'S MOTION (#98) TO DISMISS PLAINTIFF'S CLAIMS 1-5

PED moves to dismiss Plaintiff's Claims 1-5 against PED pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### I.    Background

The following facts regarding PED are taken from Plaintiffs' FAC and are assumed to be true at this stage of the proceedings[3]:

> 224. PED offers for sale and sells counterfeit utility trailers that are nearly identical to genuine Trailers Intl utility trailers.

> 225. PED advertises the infringing trailers using photographs, brand names, descriptions, and model numbers identical or confusingly similar to those Webb and Trailers Intl use on their websites, and that infringe Webb's registered copyrights and trademarks. *See* Figures 31 and 32.

---

[3] PED submits the Declaration of David M. Hoch (#99) in support of its Motion. In his Declaration Hoch provides additional information regarding the nature of PED's business, sets out the foundation for many of the arguments PED presents in its Motion, and contradicts some of Plaintiff's allegations regarding PED. "As a general rule 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)(quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). *See also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In any event, the Court concludes PED's Motion cannot efficiently be converted to a motion for summary judgment at this stage of the proceedings because Plaintiffs are entitled to discovery before the Court considers any such Motion. Accordingly, the Court's analysis on PED's Motion is constrained to those facts alleged in the FAC.

19 - OPINION AND ORDER

226. PED has actual knowledge of Webb's registered
     trademarks and copyrights.

227. PED is not authorized to manufacture, import,
     offer for sale, sell, distribute, or otherwise
     deal in trailers made from Webb's and Trailers
     Intl's designs.

FAC (#68) ¶¶ 224-27. In addition, Plaintiffs included in their FAC an image that contains a trailer with the Altocraft brand name below it allegedly captured from PED's website.[4] The following words are beside the image of the trailer: "Buy Factory Direct & Save."

## II. **Standard**

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint is based on facts that are

---

[4] Plaintiffs also include in their FAC an image of one of their own trailers. In their Reply Memorandum (#108), however, Plaintiffs acknowledge that image is not relevant to this action.

20 - OPINION AND ORDER

"merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court, nevertheless, must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

## III. **Discussion**

PED contends Plaintiffs' allegations are insufficient to state a claim for copyright infringement (Claim One), trademark infringement (Claim Two), trademark counterfeiting (Claim Three), false designation of origin (Claim Four), or unfair competition as a result of passing off Plaintiffs' marks as those of Altocraft (Claim Five).

21 - OPINION AND ORDER

The Court agrees Plaintiffs' allegations with respect to PED are sparse and constitute no more than labels and conclusions. It is consequently difficult to determine from the face of Plaintiffs' FAC which facts Plaintiffs rely on to establish the elements of the five separate claims they bring against PED. Although Plaintiffs do not need to provide detailed factual allegations, they cannot leave PED or the Court to guess about the basis for Plaintiffs' claims against PED. *See Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'")(quoting Fed. R. Civ. P. 8(a)(2)).

On this record, therefore, the Court concludes Plaintiff's allegations do not state a claim against PED in Claims 1-5, and, therefore, the Court grants PED's Motion to Dismiss.  In light of the fact that this matter is still at the pleading stage, the Court concludes justice requires Plaintiffs be allowed an opportunity to replead their claims against PED. *See* Fed. R. Civ. P. 15(a)(3).

## CONCLUSION

For these reasons, the Court **DENIES** the Altocraft Defendants' Motion (#93), the Jumbo Defendants' Motion (#95), and

22 - OPINION AND ORDER

Home Depot's Motion (#110); **GRANTS** Defendant PED's Motion (#98) to Dismiss; **DISMISSES** Plaintiff's Claims 1-5 as to PED **without prejudice**; and grants Plaintiffs leave to amend their Complaint as to PED **no later than February 5, 2016**.  The Court also directs the Altocraft Defendants, the Jumbo Defendants, and Home Depot to file an responsive pleading to Plaintiffs' next form of Complaint **no later than February 19, 2016.**

IT IS SO ORDERED.

DATED this 6th day of January, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge